UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

EARL H. SWAN, JR.                                                                                                     PLAINTIFF

V.                                                                              CIVIL ACTION NO. 3:20-CV-709-DPJ-FKB

DELTA FOOT CLINICS, INC.; AND                                                                              DEFENDANTS
BRYAN E. SHOCKLEY

ORDER

Plaintiff Earl H. Swan, Jr., says Defendant Dr. Bryan E. Shockley committed medical malpractice by failing to detect Swan's cancer. According to Swan, that breach of the standard of care caused the amputation of his right leg below the knee. The case is before the Court on two pretrial motions: (1) Defendants' motion to exclude the standard-of-care opinion of Plaintiff's expert, Ronald Blum, M.D., and (2) Plaintiff's motion in limine to exclude undisclosed expert opinions and supporting materials. *See* Mots. [42, 50]. For the reasons explained, both motions are granted.

I.        Factual Background

Swan presented to Dr. Shockley at Delta Foot Clinics, Inc., in May 2013, complaining of "right heel wound and pain." Compl. [1] at 3. Dr. Shockley, a podiatrist, "diagnosed a right medial heel area ulceration" and performed "debridement with primary closure using a unilobed rotational flap." *Id.* Dehiscence ("splitting open") of the wound occurred in September 2013, and Dr. Shockley placed "an amniotic membrane allograft . . . over the wound." *Id.* The wound subsequently healed, and Dr. Shockley discharged Swan in November 2013. *Id.*

Nearly five years later, in April 2018, Swan returned to the clinic complaining of foot pain.

> Shockley examined Mr. Swan and documented a 2 cm by .5 cm linear ulceration along the scar from the prior surgery. Defendant Shockley documented fibrous yellow tissue with minimal granulation and undermining of the wound edges. Shockley noted in his records that the area was painful to palpitation with localized erythema and mild serous drainage. Shockley ordered radiological examination. The results showed calcification in the soft tissue below the wound and scar tissue. Shockley recommended debriding the wound.

*Id.* at 3–4. The debridement was performed, and, a week later, Swan returned, complaining of continued pain. *Id.* at 4. A second debridement was performed, and Dr. Shockley recommended Epson-salt soaks and dressing the wound in Amerigel. *Id.* Swan returned a third time on May 15, 2018, and Dr. Shockley performed another debridement. *Id.* at 5.

On July 20, 2018, Swan visited MedCentris Wound Healing Institute, which, in addition to debriding the wound a fourth time, sent a tissue sample for pathological examination. *Id.* The sample was insufficient, and Swan was referred to Dr. Christopher E. Clark, a general surgeon. *Id.* Dr. Clark noted a 4 cm by 4 cm "mass of granular tissue," removed the mass, and sent it for pathologic examination. *Id.*; *see id.* at 6. Swan was thereafter diagnosed with "invasive squamous cell carcinoma," *id.*, leading to radiotherapy treatment and below-the-knee amputation, *id.* at 7.

Swan claims that, in both 2013 and 2018, Defendants Dr. Shockley and Delta Foot Clinics "knew or should reasonably have known that the standards of care call for immediate action to rule out the existence of cancer." *Id.* at 7. Defendants intend to offer expert testimony that no breach occurred. A pretrial conference was held on June 10, 2022, during which the pending motions were discussed. The Court has subject-matter jurisdiction over the dispute and will now address those motions.[1]

---

[1] Swan is a citizen of Oklahoma; Delta Foot Clinics is a Mississippi corporation located in Vicksburg; Dr. Shockley is a resident of Warren County, Mississippi. Compl. [1] at 1–2.

2

II.   Motions

      A.   Defendants' Motion to Exclude Expert Testimony [42]

To support his claim that Dr. Shockley breached the standard of care by failing to take biopsies, Swan retained two expert witnesses: Dr. Ronald H. Blum, M.D., a medical oncologist, and Dr. Steven F. Boc, a podiatrist. Defendants challenge only Dr. Blum's opinions regarding the standard of care, claiming that he lacks the expertise to render them. They do not contest his expertise as an oncologist and the other opinions in his report, including opinions on causation.

          1.   Standards

Federal courts play a gatekeeper function, preventing admission of opinions that fall beyond what Rule 702 allows. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 n.7 (1993). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Thus, "[t]he Court must determine whether (1) the expert is qualified by special knowledge, (2) his opinion is relevant, and (3) [it] has a reliable basis." *Howell v. Imperial Palace of Miss., LLC*, No. 1:09-CV-7-LG-JMR, 2011 WL 13195946, at *1 (S.D. Miss. Jan. 11, 2011) (citing *Daubert*, 509 U.S. at 589).

Whether a proposed expert should be permitted to testify under Rule 702 "is case, and fact, specific." *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006) (citation omitted). And the decision to admit or exclude evidence is within the discretion of the trial court. *Howell*, 2011 WL 13195946, at *1 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–46

(1997)); *see Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990) (noting decision of trial judge to allow expert testimony "is given broad discretion and will only be reversed if the decision is manifestly erroneous"). Finally, "[t]he party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test." *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

    2.    Analysis

According to Defendants, the Court should "exclude the standard of care testimony and opinions of Plaintiff's expert, Ronald Blum, M.D., because he is not qualified to offer the opinions to which he has testified." Mem. [43] at 1. Dr. Blum's core opinions are found in the following paragraph from his October 29, 2021 report:

> Based on this medical history, it is my opinion that when Mr. Swan first presented in May 2013, he had a primary squamous cell carcinoma of the heal [sic] that was undiagnosed because of Dr. Shockley's failure to send the tissue to pathology. As a direct consequence, we can assume that there was residual squamous cancer in the surgical site. It is also my opinion that when Mr. Swan returned in April 2018 with a lesion in the same site, this lesion was the same squamous cell carcinoma that existed in 2013.

Blum Op. [42-1] at 2.

Although Dr. Blum never actually offers a standard-of-care opinion in his report, he testified in his deposition that "the standard of care is to biopsy and to culture, if infection is in the differential diagnosis or if cancer is in the differential diagnosis." Blum Dep. [45-3] at 39–40; *but see id.* at 39 ("I can't imagine rendering opinion confidently as an expert on the standard of care against a surgeon.").

Assuming Dr. Blum has offered a standard-of-care opinion, Defendants say he is not qualified to do so. They admit that Dr. Blum's "education, training, and experience as a medical oncologist, a physician who treats metastasized cancer, may, under the proper circumstances,

qualify him to proffer expert opinions about cancer and cancer treatment." Mem. [43] at 10. But Defendants insist that Dr. Blum is "clearly unqualified to speak to the standard of care . . . applicable to a reasonably competent podiatrist like Dr. Shockley, who provided podiatry care, surgery, and wound care treatment to Mr. Swan." Mem. [43] at 7; *see* Reply [47] at 1 (framing the "standard of care issue" as "whether a reasonably prudent podiatrist providing foot wound care and treatment would have performed a biopsy or sought pathological evaluation under the specific facts as presented by Mr. Swan"). Swan says the standard of care for treating his condition is a generally recognized standard that is not specific to podiatry.

Mississippi law determines whether Dr. Blum is qualified to offer standard-of-care opinions in this case. Under Federal Rule of Evidence 601, "in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." That rule "requires federal courts to apply state rules of witness qualification when determining the competency of expert witnesses to testify regarding medical malpractice claims that turn on questions of state substantive law." *Coleman v. United States*, 912 F.3d 824, 826 (5th Cir. 2019). And under Mississippi law,

> It is generally not required that an expert testifying in a medical malpractice case be of the same specialty as the doctor about whom the expert is testifying. "It is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of admissibility." *West v. Sanders Clinic for Women, P.A.*, 661 So. 2d 714, 719 (Miss. 1995). *Satisfactory familiarity with the specialty of the defendant doctor is, however, required* in order for an expert to testify as to the standard of care owed to the plaintiff patient.

*Hubbard v. Wansley*, 954 So. 2d 951, 957 (Miss. 2007) (emphasis added).

In *Hubbard*, the court considered an appeal of the trial court's decision to exclude expert opinion from a board-certified neurosurgeon regarding "the standard of care of a physician practicing internal medicine." *Id.* at 956. The expert testified that he did not consider himself an

5

expert in the field of internal medicine, had never practiced primary-care medicine, and had "never held medical staff privileges that would entitle him to do so." *Id.* at 957. Finding Hubbard had offered "no evidence that Dr. Stringer has any familiarity with the standard of care that would be required of an internal medical specialist treating a subarachnoid hemorrhage," the court found no abuse of discretion in holding him "not qualified to testify as to the standard of an internal medicine practitioner." *Id.* at 958; *accord Troupe v. McAuley*, 955 So. 2d 848, 858 (Miss. 2007) (finding no abuse of discretion in disallowing testimony by neurologist as to appropriate standard of care which "a neuro-otolaryngologist performing middle ear surgery" owed to his patient). The *Hubbard* Court noted that familiarity with a "subject" is not the same as familiarity with a "specialty." 954 So. 2d at 958.

Here, Defendants say Dr. Blum's qualifications are equally lacking, an issue they explored during his deposition testimony. Blum Dep. [42-2].[2] Dr. Blum testified that he had not trained or practiced as a podiatrist or surgeon, *id.* at 36, 37, 47, had never been on staff at a wound-care center or held privileges that would allow him to provide wound care, *id.* at 44, and had no experience treating localized squamous cell cancers, being that oncologists treat metastasized cancers, *id.* at 36. And Dr. Blum's testimony regarding his experience in deciding when to biopsy a wound was less than clear.

> Q. And tell me how many times you have been involved in the decision to decide whether or not to biopsy an ulcer, Doctor, in your career in treating a patient.
>
> A. I can certainly remember times when at issue was whether or not a lesion that was not healing, whether or not that was related to a cancer or not, and rendering an opinion that to biopsy it based on the clinical context.

---

[2] Defendants attached 13 pages of Dr. Blum's deposition [42-2] to their motion, and deposition pagination is used in the Court's citation. Plaintiff attached 12 pages of the deposition [45-3]. Neither party filed the deposition in its entirety.

6

> I can—you know, I can recall not with any specificity, but I can certainly recall multiple occasions when there was a nonhealing wound and ulcer where cancer was in the differential, either as a primary or as a metastatic site, and the biopsy would be indicated.
>
> Q. Yes, my question is: When in the treatment of a patient in your career, and you tell me, that you have been the person to make the call on whether to diagnose a wound—I mean to biopsy a wound?
>
> A. Again, I can't—
>
> [Counsel]: Object to the form.
>
> A. I can't recall specifics. I've answered the question. I'll answer it again. I can recall in the generality the differential diagnosis of a nonhealing wound ulcer when the differential diagnosis included cancer, and as a medical oncologist I made a recommendation to the surgeon that that be biopsied.
>
> Q. Was that a general surgeon who consulted you, Doctor?
>
> A. You know, it could have occurred under a number of scenarios, either when I was called to see a patient, or when a patient of mine with cancer had an ulcer and I would call a surgeon for a consult to consider biopsy.

*Id.* at 40–41. Finally, specific to the standard of care, Dr. Blum himself testified:

> Q. Doctor, you don't feel competent to testify to the standard of care of a podiatrist, do you?
>
> A. Again, in the context of standard of care of a provider *as it relates to my area of expertise, cancer*, I feel confident to offer an opinion as to whether or not standard of care was violated by omission or commission.

*Id.* at 48 (emphasis added).

Dr. Blum's testimony suggests that his involvement in the decision to biopsy a wound occurs when either a surgeon—who already suspects cancer—calls upon him (an oncologist) for his input or when one of his existing patients (who has cancer) has a wound needing attention. Thus, the Court has not been directed to testimony indicating that Dr. Blum possesses "[s]atisfactory familiarity with the specialty of the defendant doctor." *Hubbard*, 954 So. 2d at

7

957; *see Buxton v. Ormseth*, No. 2:09-CV-99, 2011 WL 13077980, at *2 (N.D. Miss. Dec. 8, 2011) (finding nephrologist could not testify as to a breach of "the standard of care applicable to gastroenterologists"); *see also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.").

While Dr. Blum may certainly be familiar with the general "use of biopsy" in his experience as an oncologist, Resp. [46] at 4, Plaintiff has not shown that he is familiar with the standard of care required of a podiatrist treating a foot wound.[3]

B.      Plaintiff's Motion in Limine [50]

Swan filed a preventative motion to preclude Defendants from offering any undisclosed experts, expert opinions, or supporting data or literature. In their response, Defendants confirmed that there are no undisclosed experts or opinions. They also clearly identified the supporting data and literature about which their experts would testify. It appeared at the pretrial conference that both parties were on the same page regarding the defense experts, so this motion is granted.

---

[3] This holding became easier during the pretrial conference. Swan's counsel confirmed that Dr. Blum's standard-of-care testimony is not the main thrust of his testimony and that it overlaps with opinions from Swan's other liability expert. As such, striking this testimony would not result in directed verdict. *See Mallet v. Carter*, 803 So. 2d 504, 508 (Miss. Ct. App. 2002) ("An expert is necessary to determine the applicable standard of care, that the physician's actions breached the standard of care and that such breach was the proximate cause of the plaintiff's injuries."). The weakness of the testimony, combined with the redundancy, also invokes Federal Rule of Evidence 403. Finally, Swan's counsel suggested that Dr. Blum's standard-of-care testimony is necessary to establish his qualifications to offer his causation opinions, but Defendants have not challenged Dr. Blum's other opinions or his qualifications to render them.

III.     Conclusion

The Court has considered all argument raised by the parties; those not addressed would not have changed the outcome.  For the reasons stated, Defendants' motion to exclude certain portions of Dr. Blum's testimony—specifically the standard-of-care testimony—is granted. Plaintiff's Motion in Limine is likewise granted.

**SO ORDERED AND ADJUDGED** this the 17th day of June, 2022.

s/ *Daniel P. Jordan III*  
CHIEF UNITED STATES DISTRICT JUDGE